UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. C-07-164-1 |
| | § | (CIVIL ACTION NO. C-10-409) |
| BULMARO BENAVIDES JR.; aka | § | |
| BENAVIDEZ JR. | | |

**ORDER DISMISSING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE AND DENYING A CERTIFICATE OF APPEALABILITY**

Pending before the Court is Defendant Bulmaro Benavides, Jr.'s (Benavides) motion pursuant to 28 U.S.C. § 2255 and his Memorandum of Law which were received by the Clerk on December 29, 2010. D.E. 61, 61-1. The government responded and Benavides filed a reply. D.E. 64, 65. Benavides' motion is untimely. Even if the motion were somehow timely, the motion is subject to dismissal because Benavides waived the right to file the motion. Benavides' motion is dismissed with prejudice and he is denied a certificate of appealability.

### I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

### II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Benavides was arrested on March 20, 2007, and indicted a week later on two counts. The first count alleged conspiracy to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B). D.E. 1. Count Two charged conspiracy to launder money in violation of 18 U.S.C. § 1956(a)(1), (h). Id. The conspiracy allegedly began in 2004 and continued until the date of the indictment. No coconspirators were indicted with Benavides, but several coconspirators were arrested and charged separately. See id.

Benavides appeared with retained counsel for his initial appearance before a federal Magistrate Judge in late April 2007. D.E. 6. Benavides was ultimately ordered detained without bond, in part due to an immigration detainer. D.E. 16. Benavides was arraigned on May 10, 2007. Minute Entry May 10, 2007.

On June 4, 2007, Benavides pled guilty pursuant to a written plea agreement. D.E. 19, 20. The plea agreement allowed Benavides to plead guilty to Count Two and the government agreed to dismiss Count One. Benavides would get a government recommendation for sentencing at the lowest end of the applicable guideline and a recommendation for maximum credit for acceptance of responsibility. D.E. 20 at ¶¶ 1, 2. The plea agreement advised Benavides that the Court could impose any sentence up to the maximum of 20 years imprisonment. Benavides waived his right to appeal or to file a post-conviction motion pursuant to 28 U.S.C. §2255. Id. at ¶¶ 3, 7. Benavides was advised that if he attempted to commit or committed any crime after he signed the plea agreement, the government was released from its bargain and would be free to argue for any sentence and to withdraw its recommendation for acceptance of responsibility. Benavides would not be released from his guilty plea and could be prosecuted for any criminal act or attempt including perjury, false statement, or obstruction of justice. Id. at ¶ 10. After rearraignment, the Court ordered preparation of a Presentence Investigation Report (PSR). D.E. 21.

The PSR used the 2006 edition of the Sentencing Guidelines. D.E. 24 at ¶ 37. The base offense level of 24 was calculated based upon an initial offense level of 8 for money laundering to which 16 points were added based upon the value of the money laundered, in this case $2 million. U.S.S.G. §2B1.1(b)(1)(H). Id. at ¶ 38. Six additional points were added because Benavides knew that the laundered funds were the proceeds of or were intended to promote the

manufacture, importation or distribution of a controlled substance. D.E. 24 at ¶ 39. Two additional points were added because Benavides was convicted pursuant to 18 U.S.C. 1956. U.S.S.G. § 2S1.1(b)(2)(B). Three points were added because Benavides was a manager/supervisor in a conspiracy involving five or more participants. U.S.S.G. § 3B1.1(b). Probation's calculation included two points for obstruction of justice and no credit for acceptance of responsibility. D.E. 24 at ¶¶ 43, 45. Probation calculated a total offense level of 37. Benavides had a series of misdemeanor convictions for DWI and driving while his license was suspended, resulting in four criminal history points and a criminal history category of III. D.E. 24 at ¶¶ 50-55. The resulting Guideline sentence was 240 months, the maximum under the money laundering statute. D.E. 24 at ¶ 71.

Objections were filed to the PSR challenging the value of the laundered funds, factual statements in the PSR relating to Benavides' role, points for obstruction, and lack of credit for acceptance of responsibility. D.E. 34. The case was called for sentencing on October 1, 2007, and defense counsel was permitted to withdraw objections with leave to refile. D.E. 36, Minute Entry 10/01/2007. Benavides substituted new counsel before the sentencing hearing. D.E. 38, 39. New objections to the PSR were filed. D.E. 41, 42, 43.

Sentencing was held in July 2008. D.E. 55. The hearing was lengthy. Two coconspirators testified, along with an IRS agent, and a transport officer.

The government provided evidence of the amounts of money transported during the conspiracy and the value of the drugs involved as well. D.E. 59 at 14-28. The Court determined that amount involved was less than $2 million, resulting in a decrease in the points added to calculate his base offense level from 24 to 22. Id at 28. During the hearing, counsel withdrew his objection to Benavides' role in the offense, but urged an objection to the addition of points for

obstruction of justice. D.E. 59 at 30. Additionally counsel urged that the seriousness of Benavides' criminal history was overstated, even though it was correctly calculated. Id. at 30-33. The objection to criminal history was overruled. Id. at 33.

On the obstruction charge, the prosecuting attorney told the Court that the coconspirator who claimed he had been paid off refused to testify. D.E. 59 at 12. When the Court heard argument on this issue, defense counsel objected on confrontation clause grounds. D.E. 59 at 35. The Court overruled the objection.

The government called as a witness the IRS agent who originally questioned the coconspirator. Id. at 35-40. According to the agent, Benavides sent a text message to the coconspirator asking the coconspirator to travel from Maryland to the Texas Rio Grande Valley to meet with Benavides. Benavides asked the coconspirator to change clothes because he was suspicious that the coconspirator was working with law enforcement. During that meeting, the agent reported that the coconspirator was offered money to not implicate Benavides, but instead of cash, the coconspirator was given a kilo of cocaine. After the meeting, the coconspirator was traveling through Louisiana on his way back to Maryland when he was stopped. The authorities in Louisiana seized the cocaine and charged him with a state crime. Id. at 36-37. The agent never saw the text message and was not able to trace from which the text had been sent. Id. at 39. At the time this transaction took place, the coconspirator was allegedly helping federal authorities in Baltimore, Maryland after his previous drug trafficking arrest there. D.E. 59 at 37.

The coconspirator was present and available to be in Court, but refused to testify. D.E. 59 at 38. After his attorney arrived, the coconspirator was placed on the witness stand and began to answer questions. Id. at 67-92. During questioning, the coconspirator admitted he received a text message from Benavides in June 2005 asking him to come to Harlingen, Texas. Id. at 75. He

admitted he met Benavides in Harlingen after receiving the text message. Id. at 78. He denied that Benavides offered him money or cocaine to conceal Benavides' involvement. Id. at 76, 8, 81. He claimed that the IRS agent misunderstood the situation. Id. at 81. The witness testified that he told Benavides that he was not going to return to Baltimore to face charges for drug trafficking and that he wanted to see if Benavides could provide him some support. Id. at 86. Defense counsel cross-examined. Id. at 90-92. The witness refused to answer some of counsel's questions, but eventually conceded that he told the truth in his testimony before the Court that day. Id. at 91-92.

The Court closed the courtroom to hear allegations that Benavides had intimidated a second coconspirator while in the holding cell before the hearing. D.E. 59 at 41. The witness and second coconspirator alleged that Benavides had ties to the Texas Syndicate and the Mexican Mafia. He was worried about his safety based upon what he described as hard looks from Benavides in the holding cell and Benavides' conversation with another inmate in Spanish, which the witness did not understand. Id. at 46. Counsel reviewed the videotape from holding, as did the Court. D.E. 59 at 100, 103, 106-18. Additionally, a transport sergeant from Brooks County Detention Center overheard the conversation between Benavides and the first coconspirator that worried the second coconspirator. The sergeant testified that the first coconspirator initiated the conversation with Benavides, Benavides spoke about his family, and the first coconspirator asked Benavides about the nature of the proceedings. The sergeant did not hear or see anything that sounded threatening regarding the second coconspirator. Id. at 122-26.

The AUSA advised the Court that the case agent spoke to the first coconspirator before he was transported to Corpus Christi and the coconspirator told the case agent that he would not testify, which contradicted his testimony on the witness stand that he did not know why he had

been brought to Corpus Christi. The Court declined to find obstruction based upon the evidence as to intimidation directed at the second coconspirator.

At the conclusion of the hearing, the Court determined that before entering into his plea agreement with the government, Benavides had attempted to obstruct justice by giving another member of the conspiracy a kilogram of cocaine not to implicate Benavides. D.E. 59 at 140. However, because the conduct occurred before the plea agreement, the Court granted Benavides three points credit for acceptance of responsibility which reduced the Guideline range of imprisonment to 151-181. Id. The Court sentenced Benavides to 151 months imprisonment, 3 years supervised release, a $500 fine, and a $100 special assessment. D.E. 55, 56. Judgment was entered on July 23, 2008. Benavides was reminded that he waived his right to appeal. Id. at 148. Benavides did not appeal, but filed his motion pursuant to 28 U.S.C. § 2255 on December 27, 2010. D.E. 61.[1]

### III.  MOVANT'S ALLEGATIONS

Benavides claims that his conviction was obtained and his sentence was imposed in violation of his right to effective assistance of counsel. He contends that counsel was ineffective for allowing his confrontation rights to be violated. He also claims he is actually innocent of the alleged enhancement for obstruction of justice. In his Memorandum, Benavides claims that counsel failed to file a notice of appeal even though he requested that counsel do so. D.E. 61-1.

Benavides' first ground, as amplified by his Memorandum, claims that his initial counsel was ineffective because counsel failed to properly advise him of the consequences of his guilty plea, that the plea agreement provided him little or no benefit, and that counsel should have

---

[1]  Benavides' motion is dated December 27, 2010. He is entitled to the benefit of the mailbox rule. Rule 3, RULES GOVERNING SECTION 2255 PROCEEDINGS IN THE DISTRICT COURT. "A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mail system on or before the last day for filing." Id.

advised him of the possibility of an open plea. He claims that counsel's failure to discuss obstruction of justice with him before rearraignment renders his plea involuntary.

Ground Two, as outlined in the Memorandum, complains that at sentencing, defense counsel allowed Benavides' confrontation rights to be violated.

Finally, Benavides claims that his petition although filed more than a year after sentencing, may still be considered by the Court because he is actually innocent of obstruction. D.E. 61-1 at 4.

## IV. ANALYSIS

### A.     28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam). Furthermore, a defendant may not raise an issue for the first time on collateral review without first showing "cause" for the procedural default, and "actual prejudice" resulting from the error. United States v. Pierce, 959 F.2d 1297, 1301 (5th Cir.1992). The "cause and prejudice standard presents a "significantly higher hurdle" than the plain error standard applied on direct appeal. United States v. Frady, 456 U.S. 152, 166 (1982). "[A] collateral challenge may not do service for an appeal." Id. at 165.

B.      **Statute of Limitations**

A motion made under § 2255 is subject to a one-year statute of limitations, which, in most cases, begins to run when the judgment becomes final.[2] 28 U.S.C. § 2255. The Fifth Circuit and the Supreme Court have held that a judgment becomes final when the applicable period for seeking review of a final conviction has expired. Clay v. United States, 537 U.S. 522, 525 (2003); United States v. Gamble, 208 F.3d 536, 536-37 (5th Cir. 2000) (per curiam).

Judgment was entered on July 28, 2008. D.E. 56. In 2008, a criminal defendant was required to file a notice of appeal not later than ten days after entry of judgment. Fed. R. App. P. 4(b). At that time, Rule 26(a)(2) provided that the ten-day period for appealing excluded intermediate Saturdays, Sundays and legal holidays.[3] Under Rule 26 in effect then, ten days after July 28, 2008, was Monday August 11, 2008, which meant that Benavides' notice of appeal had to be filed not later than August 11, 2008. His § 2255 motion had to be filed no later than August 11, 2009. Benavides' motion was filed 1 year and 138 days too late.

Although the limitations period for § 2255 motions is not considered a jurisdictional bar, it is subject to equitable tolling "only 'in rare and exceptional cases.'" United States v. Riggs,

---

[2] The statute provides that the limitations period shall run from the latest of:

>  (1) the date on which the judgment of conviction becomes final;
>  (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;
>  (3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>  (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

[3] At the time the judgment was entered, Rule 26(a) provided that when calculating time a litigant should "[e]xclude intermediate Saturdays, Sundays, and legal holidays when the period is less than 11 days, unless stated in calendar days." Fed. R. App. P. 26(a)(2).

314 F.3d 796, 799 (5th Cir. 2002) (quoting Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998)). Benavides' claim that he is "actually innocent" of the obstruction enhancement to his sentence is an argument for equitable tolling.

In Molo v. Johnson, 207 F.3d 773, 775 (5th Cir. 2000), the Fifth Circuit declined to decide whether proof of factual innocence would toll the limitations period under any circumstances. Later, that court held that to the extent actual innocence may provide a basis for equitable tolling of the AEDPA, the relevant standard requires more than mere assertions of the petitioner's innocence. Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000). Then, in Cousin v. Lensing, 310 F.3d 843, 849 (5th Cir. 2002), the Court stated in part as follows:

> The one-year limitations period established by § 2244(d) contains no explicit exemption for petitioners claiming actual innocence of the crimes of which they have been convicted. As a consequence, a petitioner's claims of actual innocence are relevant to the timeliness of his petition if they justify equitable tolling of the limitations period. We have previously held that they do not. Therefore, Cousin's claims of innocence do not preclude the dismissal of his petition as untimely.

Id.(internal citations omitted).

Benavides has presented nothing but his own assurance that he is innocent of obstruction of justice. His bare claim is insufficient under Fifth Circuit jurisprudence to allow an exception to the bar of limitations. Accordingly, the Court concludes that Benavides' failure to file his § 2255 motion within the one-year limitations period requires that the motion be dismissed with prejudice as time-barred.

**C.     Benavides Waived His Right to File a § 2255 Motion**

Among Benavides' claims is his contention that his attorney was ineffective at rearraignment for not fully explaining the concept of obstruction of justice. Because *pro se* pleadings are interpreted liberally, the Court construes this assertion to be a claim that

Benavides' plea was involuntary and that he should not be held to have waived his right to file the pending motion pursuant to § 2255.

Benavides' claim of ineffective assistance does not automatically relieve him of his waiver of appeal and § 2255 post-conviction proceedings. See United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself"). In White, the Court decided there was "no need to except ineffective assistance of counsel claims from the general rule allowing defendants to waive their statutory rights so that they can reach a plea agreement if they wish. The Sixth Amendment right to effective assistance of counsel may also be waived, and thus need not be treated any differently." Id. at 343 (internal citations omitted).

During rearraignment, the Court questioned Benavides to ensure that his plea was knowing and voluntary. See D.E. 53. Benavides was advised that if he pled guilty he would be deported and not permitted to reenter the United States. Id. at 9. Benavides testified that he had met with his attorney, that he did not need more time with him, and that he was satisfied with the advice and efforts of counsel. Id. at 14-15. The Court read Count Two of the indictment to Benavides who testified that he had spoken to his attorney about the charge and he understood the charge against him. Id. at 16-17. Benavides acknowledged he understood his trial rights. Id. at 21-22. The Court separately admonished Benavides about his waiver of appeal and his waiver of his right to file a § 2255 motion. D.E. 53 at 23.[4] In addition, the Court reviewed the written

---

[4]     24 THE COURT: Then I find that each of you understands
    25 your trial rights. There is one other right you are giving
    1 up in this plea agreement that's also personal, only you can
    2 give it up, that is separate and apart from these trial
    3 rights that we just went over, that is a right to file a
    4 post-conviction remedy, also known as a 2255 or writ of
    5 habeas corpus, wherein you would ordinarily have been able to
    6 try to set aside your conviction and/or your sentence by

plea agreement, which included the appeal and § 2255 waiver, with Benavides. Id. at 23-24.[5] Benavides was informed that Count Two had a maximum punishment of 240 months imprisonment, a fine of up to $4 million, a $100 special assessment, and up to three years supervised release. Id. at 30. Benavides was advised that he might have a managerial role enhancement and when asked if he had discussed possible sentencing under the Guidelines with counsel, Benavides testified that he had and that he understood the concepts. D.E. 53 at 32-34.

---

    7 challenging such matters as constitutionality, jurisdiction
    8 or ineffective assistance of counsel, to name a few, but if
    9 you go forward today you give up that right as to this case
   10 forever. Do you understand that? . . . ..
   14 THE COURT: Mr. Benavides?
   15 THE DEFENDANT BENAVIDES: Yes, ma'am.

Id.

[5]
   15 They understand that
   16 their sentences are going to be determined by the use of the
   17 sentencing guidelines; however, if the Court should impose a
   18 sentence that is up to the statutory max, the defendants
   19 could not for that reason alone withdraw their plea of guilty
   20 but would remain bound by those pleas. Also, the defendants
   21 understand that they are waiving their right to appeal under
   22 Title 18, United States Code, Section 3742, which gives them
   23 a right to appeal the sentence imposed, both the sentence and
   24 the conviction, and they are waiving those rights. They are
   25 also waiving their rights that they are afforded under Title
   28, United States Code, Section 2255, which is the right to
    2 collaterally contest or attack a conviction or sentence after
    3 it becomes final.
      \*     \*     \*     \*     \*
   13 THE COURT: Is this your plea agreement, is this the
   14 entire agreement and do you understand it? . . . .
   18 THE COURT: Mr. Benavides?
   19 THE DEFENDANT BENAVIDES: Yes, ma'am.
   14 THE COURT: Did you read it completely before you
   15 signed it and did you discuss it completely with your
   16 attorney before you signed it? . . . .
   20 THE COURT: Mr. Benavides?
   21 THE DEFENDANT BENAVIDES: Yes, ma'am.

Id. at 23 -28.

plea agreement, which included the appeal and § 2255 waiver, with Benavides. Id. at 23-24.[5] Benavides was informed that Count Two had a maximum punishment of 240 months imprisonment, a fine of up to $4 million, a $100 special assessment, and up to three years supervised release. Id. at 30. Benavides was advised that he might have a managerial role enhancement and when asked if he had discussed possible sentencing under the Guidelines with counsel, Benavides testified that he had and that he understood the concepts. D.E. 53 at 32-34.

---

    7 challenging such matters as constitutionality, jurisdiction
    8 or ineffective assistance of counsel, to name a few, but if
    9 you go forward today you give up that right as to this case
   10 forever. Do you understand that? . . . ..
   14 THE COURT: Mr. Benavides?
   15 THE DEFENDANT BENAVIDES: Yes, ma'am.

Id.

[5]
   15 They understand that
   16 their sentences are going to be determined by the use of the
   17 sentencing guidelines; however, if the Court should impose a
   18 sentence that is up to the statutory max, the defendants
   19 could not for that reason alone withdraw their plea of guilty
   20 but would remain bound by those pleas. Also, the defendants
   21 understand that they are waiving their right to appeal under
   22 Title 18, United States Code, Section 3742, which gives them
   23 a right to appeal the sentence imposed, both the sentence and
   24 the conviction, and they are waiving those rights. They are
   25 also waiving their rights that they are afforded under Title
   28, United States Code, Section 2255, which is the right to
    2 collaterally contest or attack a conviction or sentence after
    3 it becomes final.
      \*    \*    \*    \*    \*
   13 THE COURT: Is this your plea agreement, is this the
   14 entire agreement and do you understand it? . . . .
   18 THE COURT: Mr. Benavides?
   19 THE DEFENDANT BENAVIDES: Yes, ma'am.
   14 THE COURT: Did you read it completely before you
   15 signed it and did you discuss it completely with your
   16 attorney before you signed it? . . . .
   20 THE COURT: Mr. Benavides?
   21 THE DEFENDANT BENAVIDES: Yes, ma'am.

Id. at 23 -28.

The government also advised the Court that Benavides could be subject to obstruction of justice. Defense counsel acknowledged that he and Benavides had not discussed that possibility. Id. at 35. The Court granted Benavides and his counsel a recess to discuss how an obstruction enhancement would affect sentencing. Id. at 35, 37, 39, 57. Benavides denied that he obstructed justice by offering money or cocaine to a coconspirator in exchange for his silence, but acknowledged that he had discussed it with counsel and understood the concept. Id. at 57. Counsel told the Court,

> what I told him was that, I discussed the issue of the obstruction, I talked about the relevant conduct. . . . And I discussed the concept of obstruction. I told him he didn't need to admit to it; however, at this point it was a good time for him to decide whether or not he wanted to go forward with his plea. . . . Irrespective of the fact that there was an issue concerning obstruction. He has informed me that he wanted to go forward irrespective of that and at the proper time we would like to. . . ."

Id. Benavides then testified that he wanted to go forward, "I will go forward with the charges that I am being . . ." Id.

The AUSA summarized the facts the United States expected to be able to prove as to Benavides. Id. at 53-56. Benavides disputed the accuracy of the AUSA's rendition as to the amount of money at issue in the whole conspiracy. Id. at 56, 59. Benavides admitted that he transported money derived from drug trafficking. Id.

Benavides' statements under oath are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). The record contradicts Benavides' claim that he did not understand his rights and the charges

against him or the potential enhancements to his sentence. Additionally, Benavides' waiver of his right to file a motion pursuant to § 2255 was knowing and voluntary.

Because the Court concludes that Benavides' challenge to the validity of his plea agreement fails, the Court finds that his plea agreement and his waiver of § 2255 rights contained therein are valid and enforceable. See United States v. Wilkes, 20 F.3d 651, 653 (5th Cir. 1994). Accordingly, the Court turns to the effect of his waiver of § 2255 rights on his remaining claims.

As noted, it is clear from the rearraignment that Benavides understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motion which is all that is required for his waiver to be enforceable. See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up). Even if Benavides' filing was timely, Benavides waived his right to file this motion and his claims are dismissed.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Benavides has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Benavides is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. See Jones, 287 F.3d at 329.

## VI.  CONCLUSION

For the foregoing reasons, Benavides' motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 61) is DISMISSED WITH PREJUDICE and he is also DENIED a Certificate of Appealability.

SIGNED and ORDERED this 12th day of September, 2011.

_____
Janis Graham Jack
Senior United States District Judge